## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| DJAKARTA A. JACOBS, *Individually and On Behalf of All Others Similarly Situated*, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TD AMERITRADE, INC., and TD AMERITRADE CLEARING, INC., | |
| Defendants. | |

Plaintiff Djakarta A. Jacobs ("Plaintiff" or "Jacobs"), individually and on behalf of all others similarly situated, files this class action complaint against Defendants TD Ameritrade, Inc. ("TDA") and TD Ameritrade Clearing, Inc. ("TDAC") (collectively, "TD Ameritrade").

## I.     INTRODUCTION

1.      Plaintiff and the members of the proposed class were at all relevant times customers of TD Ameritrade, whose cash held in its customers' brokerage accounts was subject to its cash sweep program.

2.      This case centers on TD Ameritrade's cash sweep programs whereby, acting as its customers' agent and fiduciary, TD Ameritrade automatically "sweeps" uninvested cash balances in its customers' accounts and deposits that cash into a deposit account at an affiliated bank.

3.      A cash sweep account is a tool that automatically moves extra money from a primary account into a secondary account to earn interest. A sweep account is generally used to sweep excess cash into a money market fund, where it will earn more interest than money left in a non-interest bearing account.

4.      While acting as agent and fiduciary for its customers, TD Ameritrade "swept" uninvested cash balances in customer accounts and then deposited those funds in accounts with Affiliated Banks (defined herein). Crucially, the Affiliated Banks' accounts pay far below market rates of interest, meaning Plaintiff and Class members lost out on interest they would have otherwise earned had TD Ameritrade fulfilled its obligations and swept their uninvested cash into accounts paying a reasonable market interest rate.

5.      In its customer agreements, TD Ameritrade represents that it acts as its customers' "agent" and fiduciary in establishing, maintaining, and operating the Sweep Program. TD Ameritrade selected participant banks for the Sweep Program, the type of accounts to which the Sweep Program applies and the accounts where customer funds were swept. Likewise, TD Ameritrade was responsible for negotiating interest rates paid to TD Ameritrade customers under the Sweep Program.

6.      For substantial portions of the class period, swept cash in TD Ameritrade customers' accounts consistently underperformed market rates for

sweep accounts. Comparable brokerages like Vanguard, Robinhood, Fidelity Investments, and R.W. Baird—which swept cash at independent, unaffiliated banks rather than affiliate banks—paid substantially higher rates on swept cash, than TD Ameritrade. For instance, Fidelity paid investors as much as 2.72% APY on swept cash regardless, starting in August 2023, and R.W. Baird paid investors between 2.07% to 4.15% on swept cash, depending on cash balances, as of September 2023. Conversely, TD Ameritrade paid interest rates as low as 0.01%.

7.      Other available market interest rates, *i.e.*, the federal funds rate, government money market funds, government and non-government bonds, further demonstrate the paltry rates paid by TD Ameritrade on brokerage sweep accounts were not reasonable.

8.      TD Ameritrade breached its fiduciary duties by placing customers' cash in low interest-bearing accounts held by Affiliated Banks and pocketing unpaid interest as profit.

9.      TD Ameritrade failed to disclose that it was essentially providing kickbacks to its own affiliates at its customers' expense through the Sweep Program. That is, TD Ameritrade underpaid their customers for their and their affiliates' benefit by negotiating deals with Affiliated Banks one-sided transactions that swept cash into exceedingly low-interest accounts. TD Ameritrade never disclosed these conflicted transactions to its customers and principals.

3

10.    In November 2019, Charles Schwab Corporation. ("Schwab") announced that it entered into an agreement with TD Ameritrade Holding Corporation to acquire it and its subsidiaries, including TDA and TDAC. After transitioning TD Ameritrade's customers onto its platform (a process which it completed on or about September 5, 2023), TD Ameritrade's services and accounts were fully consolidated under Schwab Corp. and its brokerage firm, Charles Schwab & Co., Inc. ("Schwab & Co."). Nevertheless, TDA and TDAC continue to exist as active corporations.

11.    Plaintiff brings this action individually and on behalf of a nationwide Class of similarly situated individuals against TD Ameritrade, only for the period in which Class member's retirement accounts were custodied and maintained by TDA and/or TDAC. This Complaint does not allege claims against Schwab Corp. or its brokerage firm, Schwab & Co., concerning funds swept from Plaintiff's or other retirement accounts to affiliated banks through a Charles Schwab sweep program, and such claims are excluded from the proposed class definition.

12.    Plaintiff brings claims against TD Ameritrade for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and, in the alternative, unjust enrichment. The Complaint also alleges a claim for violation of California's Unfair Competition Law ("UCL") by a California Subclass.

## II.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(d)(2), as this action is brought as a class, one or more members of the class are citizens of a state different than the Defendants, and the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

14.     The Court has personal jurisdiction over Defendants as TDA and TDAC both have their principal place of business here, TDAC is incorporated under Nebraska law, and both corporations do substantial business in this District. Moreover, TDA and TDAC's agreements with Plaintiff contain a forum selection clause under which the parties consented to jurisdiction in this forum.

15.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and/or relevant conduct by Defendant giving rise to Plaintiff's claims occurred in this District and because of the forum selection clause in Plaintiff's agreements, referenced above.

## III.     PARTIES

### A.     Plaintiff

16.     At all relevant times, Plaintiff Jacobs was a TD Ameritrade customer and is a resident and citizen of Woodland Hills, California.

17.     Plaintiff Jacobs maintained a brokerage account with TD Ameritrade,

5

in which cash was held over the course of the life of the account.

18.     While Plaintiff was a TD Ameritrade customer, the cash held in her account was automatically "swept" into a low interest-bearing bank account at affiliated banks pursuant to the Sweep Program. Specifically, TD Ameritrade chose to sweep uninvested cash from Plaintiff's TD Ameritrade brokerage account into a TD Ameritrade FDIC Insured Deposit Account ("IDA").

**B.     Defendants**

19.     Defendant TDA is a financial services corporation based in the U.S. with global operations. TD Ameritrade is incorporated in New York and has its headquarters in Omaha, Nebraska

20.     Defendant TDAC is a financial services corporation based in the U.S. with global operations. TDAC is incorporated in Nebraska corporation and has its headquarters in Omaha, Nebraska.

**FACTUAL BACKGROUND**

**A.     TD Ameritrade's Customer Relationship**

21.     The relationship between TD Ameritrade and its customers, including Plaintiff, is set forth in TD Ameritrade's written Client Agreement.

22.     Customers, including Plaintiff, consented to participate in the Sweep Program by agreeing to the Client Agreement.

23.     The Client Agreement established a fiduciary relationship between TD

Ameritrade and the proposed class, stating that TD Ameritrade acts as its customers' "agent" in opening deposit accounts at affiliated banks and automatically sweeping money into those accounts.

24.     The Client Agreement acknowledges that TD Ameritrade's customers, rather than TD Ameritrade, are the owners of their funds on deposit with the brokerage.

25.     The Client Agreement expressly incorporates the rules of applicable federal, state, and self-regulatory organizations including the SEC and the Financial Industry Regulatory Authority ("FINRA").

26.     Regulation Best Interest (Reg BI) (of the Securities Exchange Act of 1934) sets out TD Ameritrade's fiduciary duties as a broker-dealer, requiring them to act in the best interests of the retail customer at the time a recommendation is made. Reg BI requires broker-dealers, when making an investment recommendation, to satisfy four central obligations: *Disclosure* (providing prescribed disclosure before or at the time of recommendation, about the recommendation and the relationship between the retail customer and the broker-dealer); *Care* (exercising reasonable diligence, care, and skill in making the recommendation); *Conflicts of Interest* (establishing, maintaining, and enforcing policies and procedures reasonably designed to address conflicts of interest); and *Compliance* (establishing, maintaining, and enforcing policies and procedures reasonably designed to achieve

compliance with Reg BI).

**B.     The Sweep Program**

27.     A "sweep program" is a "service provided by a broker or dealer where it offers to its customer the option to automatically transfer free credit balances in the securities account of the customer to either a money market mutual fund product as described in § 270.2a-7 or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation." 17 CFR 240.15c3-3(a)(17).

28.     Sweep deposits operate as an important source of capital for banks, allowing them to use the deposits to make loans or invest in government securities. The net interest margin is the difference between the interest rate paid and the interest rate earned by a bank on those deposits.

29.     The SEC has emphasized that "cash sweep programs" are a "common source[ ] of conflicts of interest." *See Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Conflicts of Interest*, U.S. SEC. & EXCHANGE COMM'N (August 3, 2022) https://www.sec.gov/tm/iabd-staff-bulletin-conflicts-interest.

30.     Upon opening a brokerage account with TD Ameritrade, customers were automatically placed into the Sweep Program. Although the Sweep Program supposedly provided customers with three "Sweep Choices," customers like Plaintiff had their cash swept into the IDA as their "Designated Sweep Vehicle" by

default.

31.     Pursuant to the Client Agreement, available cash in the brokerage account would be automatically deposited in an IDA at an Affiliated Bank owned by TD Ameritrade. Before Charles Schwab acquired TD Ameritrade, IDAs were held at banks owned by TD Ameritrade's parent company, TD Bank Group, including TD Bank, N.A. and TD Bank USA, N.A. After Charles Schwab acquired TD Ameritrade and before the retirement accounts were moved to the Charles Schwab platform, IDAs were held at banks owned by Charles Schwab (and, as disclosed on account statements, "each an affiliate of TD Ameritrade"), including Charles Schwab Bank, SSB; Charles Schwab Premier Bank, SSB; and Charles Schwab Trust Bank.

32.     The Client Agreement lists affiliated banks as the only option for cash swept into IDAs through the Sweep Program. TD Ameritrade directed all accounts participating in IDA Sweep Program, including Plaintiff, to its affiliated banks.

33.     The Client Agreement incorporates "Applicable Rules," defined as "all applicable federal (for example, ERISA and Internal Revenue Code) and state laws, rules and regulations, rules of any self-regulatory organization, and constitution and applicable rules, regulations, customs, and usages of the exchange or market and its trading house."

34.     TD Ameritrade acted as its customers' agent and exercised discretion

with respect to the Sweep Program. To that end, the Client Agreement provides: "I authorize you to automatically withdraw cash or redeem securities maintained in a Designated Sweep Vehicle to satisfy my Account's obligations. I authorize you to act as my agent to purchase and redeem balances in the Designated Sweep Vehicles, and authorize you to select and use agents as you deem appropriate."

35.     The Client Agreement also affords TD Ameritrade additional discretion as Plaintiff's agent concerning the IDAs. For example, it states that "All withdrawals necessary to satisfy debts in my Account will be made by [TDAC], as my agent[,]" and that "[TDAC] will act as my agent in depositing funds into the IDAs and withdrawing funds from the IDAs."

36.     The Sweep Program primarily benefited TD Ameritrade and its affiliates to the detriment of its customers.

37.     TD Ameritrade acted in bad faith, harming the customers it was purportedly acting for, in exercising its discretion concerning the Sweep Program.

38.     TD Ameritrade devised the Sweep Program to pay unreasonably low interest rates to its customers, shifting a substantial portion of the return generated on swept deposits to its affiliated banks as profit.

39.     The Client Agreement states "The Banks use IDA balances to fund current and new investment and lending activity. The Banks seek to make a profit by achieving a positive spread between their cost of funds (for example, deposits)

and the return on their assets, net of expenses." Thus, there is no dispute that TD Ameritrade seeks to profit from keeping the interest rates in Plaintiff's and Class members' IDAs below market while earning a larger actual return on swept deposits.

**C.    TD Ameritrade's Disclosures to Its Customers Regarding the Sweep Program Contained Material Misrepresentations and Omissions**

40.    TD Ameritrade's disclosures contained material misrepresentations and omissions regarding the Sweep Program.

41.    The Client Agreement stated: "The interest rates paid with respect to the IDAs may be *higher or lower* than the interest rates available to depositors making deposits directly with the Banks or other depository institutions in comparable accounts." (Emphasis added). This statement is false and misleading because, as Defendants knew at the time, the interest rate on the cash sweep deposit account will be lower than yields on essentially any other available cash alternatives.

42.    Additionally, TD Ameritrade's disclosures contained additional misrepresentations and omissions of material facts about TD Ameritrade's role in the Sweep Program.

43.    According to the Client Agreement: "The Banks will determine interest rates on the IDAs at their discretion based upon a variety of factors, including prevailing economic and business conditions, and the nature and scope of your relationship with the Banks." This statement is misleading in that it claims the interest rates paid to customers are a function of business and economic conditions.

11

In fact, the interest rates on the Sweep Program are significantly below market rates and are not reasonably tied to any business or economic condition.

44.    TD Ameritrade failed to adequately disclose the interest rates offered by the Sweep Program. Indeed, TD Ameritrade never disclosed the interest rates its customers' IDAs could have earned if swept funds had been invested in comparable accounts with non-affiliated banks. This was a material omission of facts that customers would have found important in deciding whether to use TD Ameritrade as their broker.

45.    While remaining silent as to how much benefit TD Ameritrade actually receive, the Client Agreement provides an oblique and incomplete disclosure about affiliate banks' use of swept deposits in IDA funds, stating the "Banks seek to make a profit by achieving a positive spread between their cost for funds (for example, deposits) and the return on their assets, net of expenses." These statements omitted material facts and were misleading because they wholly omitted any details concerning the size of the spread or how the spread impacts the interest rates customers are paid when being automatically enrolled in the Sweep Program. Specifically, TD Ameritrade failed to disclose that it negotiated transactions with the affiliated banks regarding the Sweep Program and agreed to pay artificially low interest rates for its customers' cash in the Sweep Program to the benefit of the affiliated banks. At the same time, TD Ameritrade declined to charge the affiliated

banks customary fees for the Sweep Program. Through this scheme, TD Ameritrade shifted large returns to its affiliated banks, which were underwritten by its customers' swept cash (without recovering customary fees it would normally obtain from a non-affiliated bank). In short, TD Ameritrade put its own interests ahead of those of its customers, including Plaintiff and Class members.

**D.    TD Ameritrade Swept Class Members' Cash into Below-Market Interest-Bearing Accounts at Its Affiliated Banks**

46.    TD Ameritrade breached its fiduciary and contract duties by failing to negotiate reasonable interest rates for its customers' uninvested cash in operating the Sweep Program.

47.    As its customers' agent and financial advisor, TD Ameritrade was contractually and legally obligated to act in the best interest of its customers, but it violated those obligations by negotiating unreasonably low interest rates with affiliated banks.

48.    The unreasonableness of TD Ameritrade's paltry interest rates on swept cash is established by comparison to comparable interest rates available in the marketplace.

49.    As the Treasury increased the benchmark rate, three-month treasury bill yields rose from 0.046% as of January 1, 2022 to 5.394% as of January 9, 2024. Meanwhile, TD Ameritrade paid interest rates during this period that were a fraction of these rates.

50.     Other competitor financial institutions also offered sweep products with materially greater interest rates. For instance, Fidelity offered interest payments of 5% in its Cash Sweep Program; Vanguard offered 4.5%. Conversely, TD Ameritrade paid interest rates as low as 0.01%.

51.     The rates set by competitors like Fidelity, Vanguard, and R.W. Baird at arm's-length are evidence of the fair market or reasonable rates based on business and economic conditions. The rates set by TD Ameritrade, by default, in self-interested and affiliated transactions, were not reasonable.

52.     TD Ameritrade's interest rates were also substantially lower than rates paid on money market funds.

53.     By negotiating significantly lower rates for the Sweep Program in which it automatically placed Plaintiff and Class members, TD Ameritrade did not act in its customers' best interests. Instead, TD Ameritrade put its own interests above theirs, making substantial net income revenue at its customers' expense. In so doing, Defendants breached their fiduciary duties.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

55.     Plaintiff brings this action individually and as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), Fed. R. Civ. P., on behalf of the following

"Nationwide Class" consisting of:

> All persons who held cash positions in brokerage accounts custodied by TD Ameritrade and whose cash was deposited into IDAs through the TD Ameritrade Sweep Program from the earliest available date until the date when the TD Ameritrade brokerage accounts were transitioned into Charles Schwab brokerage accounts.

56.    Plaintiff also brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "California Subclass" consisting of:

> All California residents who held cash positions in brokerage accounts custodied by TD Ameritrade and whose cash was deposited into IDAs through the TD Ameritrade Sweep Program from the earliest available date until the date when the TD Ameritrade brokerage accounts were transitioned into Charles Schwab brokerage accounts.

57.    Excluded from the Classes are (a) any person who held cash positions in retirement accounts only (*i.e.*, who did not have a brokerage account) whose cash was deposited in IDAs through the TD Ameritrade Sweep Program; (b) any Judge or Magistrate Judge presiding over this action and members of their immediate families; and (c) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents controlling interest and its current or former officers and directors.

## A.    Numerosity - Rule 23(a)(1)

58.    Class members are so numerous that individual joinder is impracticable. The precise number of Class members and their identities are

unknown to Plaintiff currently. However, TD Ameritrade oversaw over $1.2 trillion in client assets through thousands of financial advisors, and Plaintiff believes that the members of the proposed Classes number in the thousands. Accordingly, Plaintiff and the Classes satisfy the numerosity requirement of Rule 23(a)(1).

59.    Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

**B.    Existence and Predominance of Common Questions of Law and Fact - Rule 23(a)(2), 23(b)(3)**

60.    Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include whether:

a.    TD Ameritrade owed fiduciary duties to Plaintiff and the putative Class members in connection with the Sweep Program;

b.    TD Ameritrade breached their fiduciary duties to Plaintiff and the putative Class members in  establishing, maintaining, and/or operating the Sweep Program;

c.    TD Ameritrade's disclosures about the Sweep Program contained material misrepresentations or omissions;

d.    TD Ameritrade breached their contracts with Plaintiff and the putative Class members regarding the Sweep Program;

e.    TD Ameritrade has been unjustly enriched because of the conduct complained of herein;

f.    TD Ameritrade's conduct regarding the Sweep Program violates the UCL;

g.    this case may be maintained as a class action under Fed. R. Civ. P. 23;

h.    to what extent Class members are entitled to damages and other monetary relief; and

i.    to what extent Class members are entitled to attorneys' fees and costs.

## C.    Typicality - Rule 23(a)(3)

61.    Plaintiff's claims are typical of the claims of the Classes because they were each a customer of TD Ameritrade that had their cash balances improperly managed by TD Ameritrade through its administration of the Sweep Program. Thus, Plaintiff's claims are typical of the claims of the members of the Classes as the claims arise from the same course of conduct by TD Ameritrade, and the relief sought within the Classes is common to the members of each.

## D.    Adequacy of Representation - Rule 23(a)(4)

62.    Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

E.    **Superiority - Rule 23(b)(3)**

63.    A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members are small compared to the burden and expense entailed by individual litigation of their claims against TD Ameritrade. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done them.

64.    Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

65.    Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

   a. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of

conduct for TD Ameritrade;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. TD Ameritrade acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF FIDUCIARY DUTY
(on behalf of Plaintiff and the Nationwide Class against Defendants)

66.      Plaintiff repeats and incorporates by reference the factual allegations in paragraphs 1 through 65 as if fully set forth herein.

67.      At all relevant times, TD Ameritrade owed fiduciary duties to Plaintiff and the members of the Nationwide Class in connection with the Sweep Program. Such duties independently arose out of (1) the agency relationship between Defendants TD Ameritrade, on one hand, and Plaintiff and the members of the Nationwide Class on the other, as to the Sweep Program; (2) TD Ameritrade holding and control over beneficial funds that belonged to its customers, related to their cash

sweep balances; (3) TD Ameritrade's discretion as to the Sweep Program and their customers' cash, while acting as their agent; and/or (4) applicable industry standards.

68.    As a fiduciary to Plaintiff and the Nationwide Class, TD Ameritrade owed them the highest duties of loyalty, candor, due care, and prudence as to the services provided in connection with establishing, maintaining, and/or operating the Sweep Program. Moreover, as a fiduciary, TD Ameritrade had a continuing duty to act exclusively for the benefit of Plaintiff and the Nationwide Class in connection with establishing, maintaining, and/or operating the Sweep Program. Last, Defendants had a continuing duty as a fiduciary to obtain informed consent from Plaintiff and the Class regarding the Sweep Program, and to make detailed disclosures regarding the program, their role, the role of various related parties, and any conflicts of interest to obtain such informed consent.

69.    TD Ameritrade further owed Plaintiff and the Class the fiduciary duty to act in good faith in connection with establishing, maintaining, and/or operating the Sweep Program.

70.    TD Ameritrade also owed Plaintiff and the Class the duty to charge reasonable fees for their services related to the Sweep Program.

71.    Plaintiff and the Class were dependent upon TD Ameritrade's ability, skill, knowledge, and goodwill with respect to the Sweep Program.

72.    TD Ameritrade owed Plaintiff and the Class similar duties by virtue

of their control over TD Ameritrade's policies or management regarding its Sweep Program.

73.    TD Ameritrade breached their fiduciary duties by the conduct alleged herein, including by designing, structuring, and/or operating the Sweep Program to benefit themselves at the expense of their fiduciary customers, making material misrepresentations and omissions regarding the Sweep Program, violating its duty of care, and acting in their own – not their customers' – best interest vis-à-vis the Sweep Program.

74.    TD Ameritrade violated their duty of loyalty by, among other things, putting their interest above that of their fiduciary customers, failing to provide sufficient information to their fiduciary customers regarding material features of the Sweep Program to obtain their informed consent, and insufficiently disclosing their own and their affiliates' role in, and conflicts of interest arising out of the Sweep Program, as more fully shown above.

75.    As a direct and proximate consequence of TD Ameritrade's conduct as alleged herein, Plaintiff and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of TD Ameritrade, as well as all other equitable relief deemed just and proper.

## COUNT II
## GROSS NEGLIGENCE
### (on behalf of Plaintiff and the Nationwide Class against Defendants)

76.    Plaintiff repeats and incorporates by reference the factual allegations in paragraphs 1 through 65 as if fully set forth herein.

77.    TD Ameritrade owed Plaintiff and the putative Class, all of whom were its fiduciary customers vis-à-vis the Sweep Program, certain duties related to its establishment, maintenance, and operation of the program.

78.    Those duties arose out of (1) the agency relationship between TD Ameritrade and Plaintiff and the members of the Class as to the Sweep Program; (2) TD Ameritrade's holding and control over beneficial funds that belonged to their customers, related to their cash sweep balances; and (3) applicable industry standards.

79.    TD Ameritrade's duties to their customers included establishing, maintaining, and/or operating the Program for the benefit of their customers, not for its own benefit. Moreover, Defendants had a duty to make sufficient disclosures to their customers regarding the Sweep Program as needed for those customers to obtain informed consent.

80.    TD Ameritrade owed Plaintiff and the Class similar duties by virtue of their control over Defendants' policies or management with regard to the Program.

81.    TD Ameritrade breached their duties by the conduct alleged herein,

including by designing, structuring, and/or conducting transactions related to the Sweep Program to benefit themselves at the expense of their customers, making material misrepresentations and omissions regarding the Sweep Program, violating their duty of care, acting in their own – not their customers' – best interest vis-à-vis the program.

82.     TD Ameritrade was not merely negligent; as more fully shown above, they were grossly negligent because their self-serving conduct showed the want of even scant care and/or was an extreme departure from the ordinary standard of conduct.

83.     Defendants' gross negligence directly and proximately caused harm to Plaintiff and the members of the proposed Class.

**COUNT III**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE)**
(on behalf of the Plaintiff and the Nationwide Class against Defendants)

84.     Plaintiff repeats and incorporates by reference the factual allegations in paragraphs 1 through 65 as if fully set forth herein.

85.     In the alternative, TD Ameritrade has received and retained a benefit from Plaintiff and the members of the proposed Class, and inequity has resulted.

86.     TD Ameritrade benefited through their unjust conduct by sweeping available cash balances from their customers' accounts in the Program into bank accounts selected for the benefits they offered to Defendants, not their customers,

and retained most of the interest generated by those cash balances.

87.     Because of TD Ameritrade's wrongful conduct as alleged herein, TD Ameritrade unjustly received a benefit at the expense of Plaintiff and Class members in the form of increased interest income that belonged to Plaintiff and Class members.

88.     It would be unjust and inequitable to allow TD Ameritrade to retain these wrongfully obtained benefits.

89.     Plaintiff alleges that because of Defendants' conduct, the amount of their unjust enrichment should be disgorged in an amount to be proven at trial.

## COUNT IV: BREACH OF CONTRACT
### (on behalf of Plaintiff and the Nationwide Class against Defendants)

90.     Plaintiff repeats and incorporates by reference the factual allegations in paragraphs 1 through 65 as if fully set forth herein.

91.     Plaintiff asserts this cause of action for breach of contract in the alternative.

92.     TD Ameritrade's relationship with its customers is governed by a written contract, the terms of which are contained in, and incorporated into various standardized documents drafted by TD Ameritrade, as outlined above.

93.     One such document is the Client Agreement. To become a customer of TD Ameritrade, each member of the Class was required to agree to the terms of the Client Agreement.

94.     The Client Agreement expressly incorporates the Applicable Rules of applicable federal, state, and self-regulatory organizations including the SEC and FINRA.

95.     FINRA Rule 2122 expressly provides that "[c]harges, if any, for services performed . . . shall be reasonable and not unfairly discriminatory among customers."

96.     Pursuant to the Client Agreement, TD Ameritrade undertook to act as an agent of the customers with regard to all transactions relating to the Sweep Program and were thus contractually obligated to obtain for Plaintiff and members of the proposed Class, through such transactions, rates of return on their cash balances that are reasonable.

97.     As set forth herein, the rates of return paid to customers on their cash balances were not reasonable. Accordingly, Defendants breached their contracts with Plaintiff and the members of the proposed Class.

98.     Plaintiff and the members of the proposed Class were harmed by Defendants' breach.

**COUNT V**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**
(on behalf of the Plaintiff and the Nationwide Class against Defendants)

99.     Plaintiff repeats and incorporates by reference the factual allegations in paragraphs 1 through 65 as if fully set forth herein.

100.    A covenant of good faith and fair dealing is implied into every contract.

101.    Plaintiff and Class members contracted with TD Ameritrade to provide them with financial and/or investment services pursuant to the Client Agreement. Under the Client Agreement, TD Ameritrade was the agent of Plaintiff and Class members and owed them fiduciary duties, including to act in their best interests. TD Ameritrade failed to obtain for Plaintiff and Class members reasonable rates of return on their cash balances and instead acted in their own interests.

102.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties (express and implied) and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenants that TD Ameritrade would act fairly and in good faith in carrying out their contractual obligations to provide Plaintiff and Class members with reasonable rates of return on their cash sweep balances.

103.    TD Ameritrade breached these implied covenants of good faith and fair dealing by siphoning Plaintiff's and Class members' deposits into IDAs that paid unfair and unreasonable rates of return. Instead of providing fair and reasonable rates of return on their customers' cash sweep balances, TD Ameritrade provided designed its customer IDA accounts, held at affiliate banks, to pay customers far below market rates, while earning a handsome return on the actual deposits and

pocketing the spread. TD Ameritrade acted dishonestly and failed to exercise and/or abused their discretion in selecting the banks which would hold Plaintiff's and Class members' cash balances structuring the rates of return to generate profits for TD Ameritrade to the detriment of its customers.

104.    Plaintiff and Class members fulfilled all the terms and obligations of their contract, including paying for TD Ameritrade's services.

105.    TD Ameritrade's failure to act in good faith in providing fair and reasonable rates of return on their customers' cash sweep balances denied Plaintiff and Class members the full benefit of their bargain. Plaintiff and Class members received a minimal return on their cash sweep balances that was much less than what they could have otherwise earned and less than their reasonable expectations under their contracts with TD Ameritrade.

106.    As a result of TD Ameritrade's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class members sustained damages in an amount to be determined at trial.

**COUNT VI:**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
(on behalf of the Plaintiff Jacobs and the California Subclass against Defendants)

107.    Plaintiff repeats and incorporates by reference the factual allegations in paragraphs 1 through 65 as if fully set forth herein.

108.    The UCL prohibits, and provides civil remedies for, unfair competition.

Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.

109.    The UCL defines unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," meaning violations of other laws are treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

110.    TD Ameritrade's conduct challenged herein violates the UCL.

111.    Specifically, TD Ameritrade's conduct was not motivated by any business or economic need or rationale. The harm and adverse impact of TD Ameritrade's Sweep Program and its use of IDAs was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

112.    The harm to Plaintiff Jacobs and members of the California Subclass arising from TD Ameritrade's unfair practices outweighs the utility, if any, of those practices.

113.    TD Ameritrade's conduct was injured accountholders in that they have been deprived of fair, market rate interest payments.

114.    As a result of TD Ameritrade's violations of the UCL, Plaintiff and members of the Subclass have paid, and/or will continue to suffer actual damages in the form of lost interest.

115.    Plaintiff Jacobs alleges that TD Ameritrade has, in the course of their

business, undertaken and engaged in unfair business acts and practices by, *inter alia*, engaging in transactions relating to the Sweep Program to generate substantial revenue for themselves with their customers' cash and beneficial returns on such cash, while paying their customers only a fraction of those returns and concealing the nature of the program from their customers. TD Ameritrade further engaged in material misrepresentations and omissions regarding key features of the Sweep Program.

116.   The deceptive business acts or practices described herein presented a threat and likelihood of harm and deception to Plaintiff and the California Subclass in that TD Ameritrade has systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

117.   As a result of TD Ameritrade's misrepresentations and omissions of material facts concerning the Sweep Program, Plaintiff and the Class have suffered an ascertainable loss of money, property, and/or value and were harmed and suffered actual damages.

118.   As a direct and proximate result of Ameritrade's violations, Plaintiff has suffered economic injury, entitling them to restitution, injunctive relief, and other remedies permitted under the law.

119.   Had Plaintiff and the California Subclass been aware of TD Ameritrade's conduct with respect to the transactions relating to the Sweep Program,

Plaintiff and the California Subclass would not have participated in those investment products or would have done so on different terms.

## PRAYER FOR RELIEF

Plaintiff requests relief as follows:

1.      Certification of the Nationwide Class and California Subclass;

2.      A declaration that the Sweep Program violates Plaintiff's and Class Members' rights;

3.      Actual damages;

4.      Punitive damages;

5.      Injunctive relief prohibiting TD Ameritrade from continuing to engage in the conduct alleged herein;

6.      Attorneys' fees and costs of suit;

7.      Prejudgment interest; and

8.      Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: January 15, 2025                Respectfully submitted,

**JACOBSON PHILLIPS, PLLC**

**s/ Joshua R. Jacobson**
Joshua R. Jacobson
Fla. Bar No. 1002264
Jacob L. Phillips

Fla. Bar No. 120130
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL 32701
Telephone: (407) 720-4057
E-mail: joshua@jacobsonphillips.com
E-mail: jacob@jacobsonphillips.com